UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

5419 NEW CUT ROAD, LLC                                                              Plaintiff

v.                                                                    Civil Action No. 3:24-cv-184-RGJ

SHELTER GENERAL INSURANCE                                                          Defendants
COMPANY ET AL.

* * * * *

## MEMORANDUM ORDER & OPINION

Defendant Shelter General Insurance Company ("Shelter") moves to bifurcate and stay

discovery. [DE 23].[1] Plaintiff 5419 New Cut Road, LLC's ("Plaintiff") responded, and Shelter

replied. [DE 25; DE 30]. The motion is fully briefed and ripe. For the reasons below, Shelter's

Motion to Bifurcate [DE 23] is **GRANTED**, and Shelter's request for a stay of discovery [DE 23]

is **DENIED**.

## I.     BACKGROUND

In July 2021, Plaintiff entered an insurance contract with Shelter for a property located at

5419 New Cut Road. [DE 1-3 at 14]. The insurance contract allowed for replacement cost of the

property in the event of a covered loss. [DE 20 at 225]. In April 2022, "Plaintiff refinanced its

loan on the subject property" and communicated to its insurance agent, Barry McAfee ("McAfee"),

that a new mortgagee was to be substituted in place of the original mortgagee on the insurance

policy. [DE 1-3 at 14]. Plaintiff asserts that it only authorized a change in mortgagee. [*Id*. at 15].

On April 25, 2022, a fire caused significant damage to 5419 New Cut Road. [*Id*.]. Plaintiff

"immediately reported the fire to Shelter who assigned [this claim] to its adjuster, Nate Seely."

---

[1] The Joint Local Rules for the Eastern and Western Districts of Kentucky contemplate a single, unified
motion and memorandum. *See* Local Rule 7.1. Going forward, counsel is advised to file a unified motion.

[*Id*.].  Plaintiff also hired a public adjuster to guide it through the insurance claims process. [*Id*.].

The public adjuster requested from Shelter "specimen copies of the declarations page, policy and

endorsements" covering the property.  [*Id*.].

Upon receipt of the specimen documents, Plaintiff alleges it learned for the first time that

Shelter altered the insurance policy to cover claims at actual cash value, rather than replacement

value.  [*Id*.].  However, Plaintiff contends that it never requested this change, and notified Shelter

of the unauthorized change in policy.  [*Id*.].  In response, Shelter informed Plaintiff that the change

in coverage had been made on September 28, 2021," and provided no further explanation.  [*Id*].

Shelter then informed Plaintiff that the deadline to return proof of loss would not be extended  and

denied Plaintiff's request for advance payment regarding mitigation costs and costs incurred in

protecting the property following the loss.  [*Id.*].   Nevertheless, Plaintiff "timely completed the

Sworn  Statement  in  Proof  of  Loss  setting  forth  the  replacement  cost  of  the  property  as

$455,000.000 and provided all documentations requested by [Defendant]."  [*Id*. at 16].

Plaintiff claims that it "agreed to [Shelter's] request to have the property inspected twice

and to obtain an appraisal in an effort to promptly resolve [the] claims."  [*Id*. at 16].  And "despite

having the property appraised at both actual cash value and replacement cost," Shelter has refused

to issue full payment.  [*Id*.].  Plaintiff states the only payment it has received from Shelter for the

loss is $37,566.53 to date.  [*Id*].

This action was originally filed in Jefferson Circuit Court, alleging claims of breach of

contract, vicarious liability, and violations of Kentucky Unfair Claims Settlement Practices Act

("KUCSPA") and common law bad faith.  [DE 1-3].   Shelter removed this case to federal court

under diversity jurisdiction.  [DE 1].  Plaintiff alleges that Shelter breached the insurance contract

because Shelter: (1) materially altered the terms of the insurance contract, (2) refused to pay for

the damages, (3) refused to pay sums owed for lost rent, (4) unreasonably delayed payments to Plaintiff, and (5) refused to honor the appraisal terms set forth in the insurance contract. [*Id*. at 17]. And Plaintiff contends that Shelter violated the KUCSPA and common law bad faith, in relevant part, by: (1) misrepresenting insurance policy provisions relating to coverage issues, (2) failing to acknowledge and act reasonably and promptly, (3) failing to adopt and implement reasonable standard for promptly investigations of claims, (4) refusing to pay the claim without conducting a reasonable investigation, and (5) not attempting in good faith to effectuate prompt, fair and equitable settlement. [*Id*. at 21].

Shelter now moves to bifurcate the bad faith claims and stay discovery, pending resolution of the vicariously liability and breach of contract dispute. [DE 23].

## II.   DISCUSSION

### A. Bifurcation

Shelter argues that the Court should bifurcate Plaintiff's bad faith claims from its vicarious liability and breach of contract claims, and stay discovery, because "the crux of Plaintiff's bad faith claims hinge on the outcome of the breach of contract claim and the vicarious liability claims, neither of which has been resolved, rendering the bad faith claims premature and unripe for either active litigation or discovery." [DE 23-1 at 271]. Plaintiff argues that the Court should deny Shelter's motion to bifurcate and request to stay discovery because the claims and discovery are inextricably intertwined. [DE 25 at 282].

Pursuant to Federal Rule of Civil Procedure 42(b), the moving party bears the burden of showing that bifurcation of a bad faith claim would: (1) serve the interest of convenience, (2) avoid undue prejudice, or (3) would expedite and economize the judicial proceedings. *See Dippin' Dots, LLC v. Travelers Prop. Cas. Co. of Am.*, 322 F.R.D. 271, 274 (W.D. Ky. 2017) (citing *Wilson v.*

*Morgan*, 477 F.3d 326, 339 (6th Cir. 2007)).  "Because [t]he piecemeal trial of separate issues in

a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual

course, the party seeking bifurcation has the burden of showing that concerns such as judicial

economy and prejudice weigh in favor of granting the motion."  *Pryor v. State Farm Mut. Auto.*

*Ins. Co.*, No. 1:16-CV-312, 2017 WL 354228, at *1 (S.D. Ohio Jan. 23, 2017) (internal quotation

marks and citation omitted).  The Sixth Circuit has repeatedly found that "[t]he decision whether

to try issues separately is within the sound discretion of the court[.]"  *Nelson v. Columbia Gas*

*Transmission, LLC*, 808 F. App'x. 321, 329 (6th Cir. 2020) (quoting *Bath & Body Works, Inc. v.*

*Luzier Personalized Cosms., Inc.*, 76 F.3d 743, 747 (6th Cir. 1996)).

Generally, when determining whether to exercise the power to bifurcate, the Court

considers "several facts, including 'the potential prejudice to the parties, the possible confusion of

the jurors, and the resulting convenience and economy.'"  *Wilson*, 477 F.3d at 339 (quoting *Martin*

*v. Heideman*, 106 F.3d 1308, 1311 (6th Cir. 1997)).  "Courts should look to case-specific facts to

determine whether bifurcation is proper, placing the burden on the party seeking bifurcation to

show separation of issues is the most appropriate course."  *Forrest B. White, Jr. Masonry, Inc. v.*

*ABG Caulking Contractors, Inc.*, No. 5:13-CV-00194-TBR, 2014 WL 991734, at *1 (W.D. Ky.

Mar. 13, 2014).

"When resolving one issue will likely dispose of other issues, bifurcation may be

particularly appropriate."  *Royal Consumer Prod. v. Martin Indus., LLC*, No. 3:15-CV-00830-

CRS, 2016 WL 3080841, at *1 (W.D. Ky. May 31, 2016).  Courts in this district have consistently

bifurcated bad faith claims from other claims where resolution of a single claim would be

dispositive of the entire case.  *See, e.g.*, *Smith*, 403 F.3d at 407; *Austin v. State Farm Fire & Cas.*

*Co.*, No. 1:23-CV-00140-GNS-HBB, 2024 WL 917380 (W.D. Ky. 2024); *Hub at Lovers Lane,*

*LLC v. Cincinnati Ins.*, No. 1:24-CV-00006-BJB-HBB, 2024 WL 1701977 (W.D. Ky. 2024);

*Brantley v. Safeco Ins. of Am.*, No. 1:11-CV-00054-R, 2011 U.S. WL 6012554 (W.D. Ky. 2011);

*contra Curry v. State Farm Mut. Auto. Ins.*, No. 2:19-CV-4469, 2020 WL 13885993, at *2 (S.D.

Ohio May 7, 2020) (noting that [a]lthough the general rule among district courts in Kentucky may

be to grant bifurcation, district courts in the Southern District of Ohio routinely deny such motions

and collecting cases).   Generally, a bad faith claim fails if a plaintiff does not prevail on the

coverage issue because "Kentucky law does not provide a bad-faith cause of action unless the

plaintiff can prove that the insurance company had a contractual obligation to pay the

claim." *Holloway v. Ohio Sec. Ins.*, No. 3:14-CV-00856-CRS, 2015 WL 6870141, at *1 (W.D.

Ky. 2015); *See also, Nationwide Mut. Fire Ins. Co. v. Jahic*, No. 3:11-CV-00155, 2013 WL 98059,

at 2* (W.D. Ky. 2013) ("Where the bad faith claim depends on the resolution of the underlying

contractual dispute regarding the policy of insurance, it is reasonable for a court to resolve the

coverage question before allowing the bad faith claim to proceed.").   Courts in this district,

however, have denied bifurcation where the facts at issue are inextricably intertwined and there is

"no purpose to be served by bifurcation of the claims." *See Tharpe v. Illinois Nat. Ins. Co.*, 199

F.R.D. 213, 215 (W.D. Ky. 2001).   Claims are inextricably intertwined when one would offer the

same evidence to prove or defeat either claim.  *Id.*

In this case and at this early stage of the litigation, Plaintiff's bad faith claims appear

inextricably intertwined with Plaintiff's negligence and breach of contract claims.  [*See* DE 1-3].

Plaintiff's breach of contract and bad faith claims include overlapping allegations.  [*See* DE 1-3].

Specifically, the nucleus of both claims is two-fold: (1) Shelter altered the insurance contract

without Plaintiff's permission, and (2) Shelter refused to provide payment of the claim.  [DE 1-3

17, 20].   That some claims may require the same proof does not require denying bifurcation where

bifurcation furthers the interest of judicial economy. *Dippin' Dots, LLC*, 322 F.R.D. at 274. And

in insurance cases, courts have found "[i]ntroducing at trial evidence related to bad faith claims

could likely confuse the jury . . ." because jurors may conflate the bad faith claim with breach of

contract or negligence claims. *Rowlett v. LM Ins.*, No. 6:20-CV-253-REW, 2021 WL 8998926, at

*3 (E.D. Ky. 2021); *see also White v. ABG Caulking Contractors, Inc.*, No. 5:13-CV-00194-TBR,

2014 U.S. Dist. LEXIS 32413, at *4 (W.D. Ky. 2014). Likewise, "[t]rying the two claims together

would be prejudicial because it would unnecessarily interject the issue of bad faith into the primary

dispute of liability, thereby . . . complicating the issues at trial . . ." *Id.* (citing *White*, 2014 U.S.

Dist. LEXIS 32413, at *4). Accordingly, bifurcation would likely prevent jury confusion and

prejudice to the defendant.

Weighing the factors, the Court finds some form of bifurcation of the trial in this matter

appropriate. Therefore, the Court will bifurcate of the bad faith claims from Plaintiff's other claims

during trial and **GRANTS** Shelter's Motion in this regard. [DE 23]. However, bifurcation does

not necessarily mean severance of claims into two separate trials. *Brown v. Tax Ease Lien Invs.,*

*LLC*, 77 F. Supp. 3d 598, 604 (W.D. Ky. 2015). The court could bifurcate the claims within the

same trial, with the jury only learning about the bad faith claims after a verdict on the initial claims.

The Court reserves the right to determine later, for instance after resolving dispositive motions,

how bifurcation of the trial will occur.

### B.  Stay Discovery

Shelter also asks the Court to stay discovery because: (1) it would prevent expensive and

potentially unnecessary discovery of irrelevant and potentially prejudicial information, and (2) it

would avoid unnecessary intrusion into privileged and/or confidential materials. [DE 23 at 269].

Plaintiff argues that holding discovery in abeyance is improper because this case "is unlike other

first party claims where and insurer has denied coverage to an insured and an insured is suing for determination of coverage and bad faith." [DE 25 at 282]. Specifically, "[t]he determination as to why Shelter changed the Plaintiff's policy from replacement value necessarily involves discovery of internal Shelter communications and the individuals involved in the decision making process . . ." and any "discovery disputes can be readily addressed by a privilege log and motion practice." [*Id*.].

"Although bifurcation of the trial does not necessarily require bifurcation of discovery, the decision to stay [ ] discovery is within the discretion of the trial court." *O'Hara v. Laurel Cnty. Corr. Ctr.*, No. 6:23-CV-026-CHB, 2023 WL 5729212, at *11 (E.D. Ky. Sept. 5, 2023) (quoting *Riedling v. Motorists Ins. Grp.*, No. CV-11-47-DLB, 2011 WL 13228003, at *2 (E.D. Ky. June 8, 2011) (cleaned up)). Like bifurcation, "[t]rial courts have broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Gettings v. Bldg. Laborers Loc. 310 Fringe Benefits Fund*, 349 F.3d 300, 304 (6th Cir. 2003) (citing *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999)). However, the issue of bifurcation is independent of staying discovery. *Warner v. State Auto Prop. & Cas. Ins.*, 2019 U.S. Dist. LEXIS 246001, at *8 (W.D. Ky. 2019). "Stay is appropriate where claims may be dismissed based on legal determinations that could have been altered by any further discovery." *Id*. (citing *Gettings*, 349 F.3d at 304). Thus, it is in the Courts discretion to bifurcate the claims, yet not hold discovery in abeyance. *See id*.

As discussed above, Plaintiff's breach of contract and bad faith claims are inextricably intertwined. *See Tharpe*, 199 F.R.D. at 215. "[B]ecause the lines between these claims are somewhat blurred in this case, any bifurcation of discovery would inevitably lead to more litigation about where the line between permissible discovery and deferred discovery would be drawn and

would create inefficiencies such as multiple depositions of the same witnesses." *O'Hara v. Laurel Cty. Corr. Ctr.*, 2023 U.S. Dist. LEXIS 156291, at \*35 (E.D. Ky. 2023) (quoting *Duggan v. The Vill. of New Albany*, 2009 U.S. Dist. LEXIS 59271, 2009 WL 2132622, at \*4 (S.D. Ohio 2009)). And for many of the same reasons that the Court found that bifurcation in this case does not lend itself to convenience and economy, the Court finds holding discovery in abeyance would only prevent Plaintiff from adequately making their case, as discovery for the two claims "overlap and involve the same parties, actions, inactions and time frame." *O'Hara.*, 2023 U.S. Dist. LEXIS 156291, at \*35. Therefore, because Plaintiff's claims overlap and involve the same parties, actions, inactions, and timeframes, and otherwise require the same evidence to prove each, Shelter's request for a stay in discovery [DE 23] is **DENIED**.

### CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that:

(1)  Shelter's Motion for Bifurcation [DE 23] is **GRANTED as to the trial in this matter.** The Court will determine how bifurcation at trial will occur closer to the trial date.

(2) Shelter's Motion to Stay Discovery [DE 23] is **DENIED**.

November 8, 2024

Rebecca Grady Jennings, District Judge
United States District Court